2014 COA 172

**Ricky NIXON, Petitioner–Appellant,**

**v.**

**CITY AND COUNTY OF DENVER and Manager of Safety, Respondents–Appellees.**

**Court of Appeals No. 13CA2059**

Colorado Court of Appeals, Div. I.

Announced December 18, 2014

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2014.

City and County of Denver District Court No. 12CV6760, Honorable Elizabeth A. Starrs, Judge

Reynolds Law, LLC, Brian R. Reynolds, Denver, Colorado, for Petitioner–Appellant

Scott Martinez, City Attorney, Karla J. Pierce, Assistant City Attorney, Jennifer L. Jacobson, Assistant City Attorney, Kristen A. Merrick, Assistant City Attorney, Denver, Colorado, for Respondents–Appellees

Opinion by JUDGE TERRY

¶ 1 Petitioner, Ricky Nixon, a former police officer with the Denver Police Department, appeals the district court's order that effectively upheld his discharge. For the reasons explained below, we reverse that part of the district court's order pertaining to Nixon, and remand the case to the Civil Service Commission (Commission) for reconsideration of its decision.

## I. Background

¶ 2 This case arises from a complex set of administrative actions and appeals. Respondents, the City and County of Denver (the City) and its Manager of Safety, discharged Nixon and his fellow officer Kevin Devine for their involvement in an incident involving the arrest of citizens outside a Denver restaurant. Devine's discharge is not at issue in this appeal.

¶ 3 Nixon was discharged for violating departmental rule RR–112.2 (Commission of a Deceptive Act) in connection with his report of the arrest incident. After Nixon submitted his report, the City discovered that the events had been captured on a video surveillance camera. The Manager of Safety discharged Nixon in part because of perceived discrepancies between his report and the video footage.

¶ 4 Nixon appealed the Manager of Safety's decision to the Commission, and, as part of that appeal, a hearing was held before a hearing panel (Panel). The Panel reversed the Manager of Safety's decision as to Nixon. The City and the Manager of Safety then appealed to the full Commission, which upheld the Panel's decision, concluding that it was bound by the Panel's factual determination that Nixon had not intentionally lied about the pertinent events.

¶ 5 The City and the Manager of Safety next appealed the Commission's decision to the Denver District Court under C.R.C.P 106(a)(4), which allows review of agency actions such as this one. The district court determined that the Commission had applied the wrong legal standard. The court went on to make its own findings, which conflicted with those of the Commission, and reversed the Commission's decision, thereby upholding Nixon's discharge. Nixon appeals from the district court's order.

## II. Summary of Our Holding

¶ 6 The Court of Appeals serves an important function in assuring the right of appeal to Colorado litigants. Many members of the public are unfamiliar with the role of the appellate court. We do not retry cases or rehear evidence. Instead, the way we

review appeals is constrained by certain legal requirements, known as "standards of review." In this instance, the standard of review is dictated by a rule of procedure adopted by the Colorado Supreme Court, known as C.R.C.P. 106(a)(4), and by case law. We are also bound in this case by section 24–4–105(15)(b), C.R.S.2014, of the State Administrative Procedure Act.

¶ 7 Applying these legal principles, we are required to ignore the district court's application of the law, and instead determine whether the *Commission* erred in *its* application of the law. As more fully explained below, we conclude that the Commission made an error in applying the law. However, we also conclude that the district court imposed the wrong *remedy* for the Commission's error.

¶ 8 Simply put, the Commission made a legal error in determining that it was required to defer to certain findings made by the Panel. But the district court also erred because it did not send the case back to the Commission to have the Commission apply the correct legal standards and issue a new decision.

¶ 9 These are not mere legal technicalities. This outcome is dictated by longstanding Colorado statutory and case law and rules. For these reasons, we reverse that part of the district court's order that reversed the Commission's decision under RR–112.2 as to Nixon, and we direct the district court to remand the case to the Commission for further proceedings.

### III. Standards of Review

¶ 10 Our review of this appeal is circumscribed by the following standards of review.

¶ 11 In a C.R.C.P. 106(a)(4) proceeding such as this, the court's review is limited to determining whether the Commission exceeded its jurisdiction or abused its discretion. *See Woods v. City & Cnty. of Denver*, 122 P.3d 1050, 1053 (Colo.App.2005). When an action under C.R.C.P. 106(a)(4) is appealed, we review the decision of the administrative body itself, and not that of the district court. *Id.*

¶ 12 Thus, our role is to determine whether the Commission applied the correct legal standard and whether competent evidence supports its exercise of discretion. *McCann v. Lettig*, 928 P.2d 816, 817 (Colo. App.1996). Under C.R.C.P. 106(a)(4), a reviewing court may reverse the decision of an administrative agency for an abuse of discretion if the court finds that the agency acted arbitrarily or capriciously, made a decision that is unsupported by the record, erroneously interpreted the law, or exceeded its authority. *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1245 (Colo. 2001).

### IV. Analysis

¶ 13 Nixon was accused of violating a rule, RR–112.2 of the Denver Police Department's Operations Manual. The rule states, "In connection with any investigation or any judicial or administrative proceeding, officers shall not willfully, intentionally, or knowingly commit a materially deceptive act, including, but not limited to, verbally departing from the truth, making a false report, or intentionally omitting information."

¶ 14 The following excerpts from the Commission's decision concerning both Nixon and Devine are pertinent to our analysis:

> [T]he Panel determined that the City [had] failed to establish that any of the Officers' omissions or misstatements [was] willful, knowing, or intentional within the meaning of RR–112.2. . . . Instead, the Panel determined that any misstatements or omissions were inadvertent mistakes reasonably arising from the Officers' imperfect recollection of this highly charged incident. . . . [The Panel found,] "There is no evidence that the actions, statements or omissions of [the Officers] were anything more than misrecollections [sic], or forgetfulness in an event that was of short duration and extremely chaotic." The Panel further noted that none of the department's command officers who reviewed this incident concluded that the Officers violated RR–112.2.
>
> . . .
>
> Any application of RR–112.2 requires an inquiry into the Officers' state of mind—did they fail to report, or did they misreport, with the intent to deceive. Previous-

ly, we have defined the *mens rea* element of RR–112.2 as requiring the City to establish that the false statement was made with the knowledge that the statement was false. Put another way, any misstatement or omission must not be innocent or inadvertent. Although the Panel did not have the benefit or our ruling at the time it rendered its decision in this case, it nevertheless made factual findings directly addressing this precise issue. *See Panel's Order* at 12 ("[T]he Panel finds that Officer Nixon's reporting is clearly a function of the chaotic scene and not an attempt to intentionally deceive."); *id.* ("The … Panel finds that the actions and omissions of the officers were not done with an intent to deceive or hide the truth."); *id.* at 13 ("There is no evidence that the actions, statements or omissions of [the Officers] were anything more than misrecollections [sic], or forgetfulness in an event that was of short duration and extremely chaotic.").

… [U]nder the express terms of [City Charter § 9.4.15(F)], *these findings of evidentiary fact are binding on the Commission.* Moreover, even if we were inclined to question this factual finding, we are mindful of the Panel's superior position in determining the credibility of witnesses …. Thus, we affirm the decision of the … Panel that the City did not establish [that] either Officer violated RR–112.2 and, consequently, [we] affirm the Panel's reinstatement of the Officers.

(Emphasis added.)

¶ 15 In short, Nixon contended, and the Commission on review agreed, that *whether he intended to deceive was a finding of evidentiary fact,* and that, because the Panel had found that he had no intent to deceive, the Commission was bound by that finding, and had no choice but to conclude that a violation of RR–112.2 had not been established.

¶ 16 On appeal, the City and the Manager of Safety argue that the Commission's ruling constituted an abuse of discretion, and should be reversed. Because we conclude that the Commission misapplied the law, we agree. *See Berger v. City of Boulder,* 195 P.3d 1138, 1139 (Colo.App.2008) (a governmental agency abuses its discretion where it misinterprets or misapplies the governing law). As explained more fully below, the Commission erred by failing to make *ultimate conclusions of fact* as to whether Nixon "willfully, intentionally, or knowingly commit[ted] a materially deceptive act, including, but not limited to, verbally departing from the truth, making a false report, or intentionally omitting information," as provided in RR–112.2.

A. What Is an "Ultimate Conclusion of Fact," and How Does It Differ From a "Finding of Evidentiary Fact"?

¶ 17 Our analysis is driven by statutory law. The concepts involved are quite complex and somewhat counterintuitive.

¶ 18 Court and agency review of the decisions made by hearing officers and administrative law judges (ALJs) is governed by the State Administrative Procedure Act, sections 24–4–101 to –108, C.R.S.2014. Section 24–4–105(15)(b) of the Act draws a distinction between review of "findings of evidentiary fact" and review of "ultimate conclusions of fact" that have been made by hearing officers and ALJs:

> The *findings of evidentiary fact, as distinguished from ultimate conclusions of fact,* made by the administrative law judge or the hearing officer shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence. The agency may remand the case to the administrative law judge or the hearing officer for such further proceedings as it may direct, or it may affirm, set aside, or modify the order or any sanction or relief entered therein, in conformity with the facts and the law.

§ 24–4–105(15)(b) (emphasis added).

¶ 19 Thus, here, while the Panel's findings of evidentiary fact were binding on the Commission and could not be set aside if they were supported by competent evidence in the record, the Commission was not bound by the Panel's "ultimate conclusions of fact" as to whether Nixon violated RR–112.2. *See* § 24–4–105(15)(b); *see also Lawley,* 36 P.3d at 1245. Therefore, the Commission could

substitute its own judgment for the Panel's ultimate conclusions of fact as long as the Commission's ultimate conclusions of fact had "a reasonable basis in law." *Lawley*, 36 P.3d at 1245.

¶ 20 Our supreme court has acknowledged that the Act's distinction between "evidentiary facts" and "ultimate conclusions of fact" is not always clear. *Id.*

¶ 21 "[E]videntiary facts generally include the detailed factual or historical findings on which a legal determination rests." *Id.; see also Ricci v. Davis*, 627 P.2d 1111, 1118 (Colo.1981) (evidentiary facts are found by a hearing panel after it has taken and weighed evidence, as to both accuracy and credibility). Findings of evidentiary fact are binding on the administrative body if they are supported by substantial evidence in the record. *Ricci*, 627 P.2d at 1118.

¶ 22 "Ultimate conclusions of fact, on the other hand, involve conclusions of law, or at least mixed questions of law and fact, and often settle the rights and liabilities of the parties." *Lawley*, 36 P.3d at 1245. An "ultimate conclusion of fact" (sometimes referred to as an "ultimate finding of fact") may be, and usually is, mixed with ideas of law or policy, and has been characterized as a conclusion of law, or at least a determination of a mixed question of law and fact. *Ricci*, 627 P.2d at 1118 (citing 2 K. Davis, *Administrative Law Treatise* § 16.06 (1958), and *Helvering v. Tex–Penn Oil Co.*, 300 U.S. 481, 491, 57 S.Ct. 569, 81 L.Ed. 755 (1937)).

¶ 23 Where an administrative body is interpreting and applying its own rules to the evidentiary facts, it is making an ultimate conclusion of fact. *Ricci*, 627 P.2d at 1118. The administrative body—the Commission in this case—is entitled to deference in the interpretation and application of its own rules, and in making ultimate conclusions of fact. *Id.* (" '[W]here the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited.... [The agency's] determination ... is to be accepted if it has 'warrant in the records' and a reasonable basis in law.' " (quoting *NLRB*

*v. Hearst Publ'ns, Inc.*, 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), *overruled in part on other grounds by Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992))).

¶ 24 In *Lawley*, the supreme court ruled that the determination of whether a plaintiff had met the burden of proof in an employment discrimination case "requires an analysis of the historical facts of the case in light of the applicable discrimination law in order to make an ultimate conclusion" of fact. 36 P.3d at 1246. Similarly, in this case, the Commission was required to analyze the factual findings of the Panel and make its own ultimate conclusion of fact regarding whether Nixon committed a deceptive act or omitted information in violation of RR–112.2.

**B. The Commission Erred in Failing to Make Its Own Ultimate Conclusions of Fact**

¶ 25 Because the Panel had made findings that Nixon was credible, and had no intent to deceive, the Commission believed that it was bound by those findings, and that the acceptance of those findings prevented the Commission from evaluating the Panel's determination that Nixon had not committed an act or omission in violation of RR–112.2. In concluding that it was completely bound by the Panel's findings, the Commission committed an error of law; specifically, it abdicated the responsibility to make its own ultimate conclusions of fact, as required by section 24–4–105(15)(b). To meet that responsibility, the Commission was required to make ultimate conclusions of fact as to whether Nixon willfully, intentionally, or knowingly (1) verbally departed from the truth, (2) made a false report, or (3) intentionally omitted information. See RR–112.2.

**C. The Remedy for the Commission's Error Is Remand to the Commission**

¶ 26 As we have already concluded, the Commission incorrectly interpreted the law to mean that, given the Panel's findings, the Commission was constrained to determine that Nixon had not violated RR–112.2. The district court relied on a legal analysis

different from ours, but also concluded that the Commission incorrectly interpreted the law. However, the district court erred by not recognizing the requirement of Colorado law that the applicable agency must, in the first instance, make its own ultimate conclusions of fact. *See* § 24–4–105(15)(b); *Ricci,* 627 P.2d at 1118; *see also Lawley,* 36 P.3d at 1245 (an administrative board can substitute its own judgment for the decision of an ALJ with respect to an ultimate conclusion of fact as long as the board's finding has a reasonable basis in law); C.R.C.P. 106(a)(4)(IX) (where a governmental body has failed to make conclusions of law necessary for review of its action, the court may remand the case to that body for the making of such conclusions of law).

¶ 27 This error of law requires reversal and remand to the Commission for it to make its own ultimate conclusions of fact, recognizing that in so doing, it is not bound by any ultimate conclusions of fact made by the Panel. *See Lawley,* 36 P.3d at 1245.

¶ 28 In reaching our conclusion, we are mindful of the supreme court's analysis in *Lawley. See id.* at 1248–49. In that case, a hearing officer had determined that there was no intent by the University of Northern Colorado to discriminate against its employee, Lawley, based on her gender. The State Personnel Board reversed, concluding that intent to discriminate had been shown. A division of this court reversed the Board's decision, concluding that there was no evidence in the record to establish intent to discriminate based on gender. The supreme court then reversed the division's decision, concluding that the Personnel Board could review the hearing officer's record and could infer from it the ultimate conclusion of fact that there was intentional gender discrimination. The supreme court noted that the Court of Appeals division had erred by "looking for a 'smoking gun' in the nature of direct evidence of discrimination," *id.* at 1249, and stated:

> "[D]irect evidence of discrimination is rare.... There should be nothing novel about establishing [intentional discrimination] through the use of circumstantial evidence, for ... circumstantial evidence is

not less probative than direct evidence, and in some cases is even more reliable." *Bodaghi* [*v. Dep't of Natural Res.,* 995 P.2d 288, 296 (Colo.2000)]. Thus, the [Court of Appeals division's] conclusion that "there is no evidence in this record that [the assistant to the Vice–President of Administration] reached that conclusion because Lawley is a woman," ... is error in that it disregards several relevant facts that support the Board's inference of intentional discrimination and its conclusion that the University's nondiscriminatory justification for its concern with Lawley's salary was in fact pretextual.

*Id.*

¶ 29 Though *Lawley* dealt with gender discrimination, its analysis is equally applicable to this case alleging willful, intentional, or knowing departure from the truth, false reporting, and omission of information. Like intent to discriminate, it would be rare for there to be direct evidence of willful, intentional, or knowing acts of deception, and a finding of such a mental state is often made by inference from the direct evidence. *See Frontier Exploration, Inc. v. Am. Nat'l Fire Ins. Co.,* 849 P.2d 887, 891–92 (Colo.App. 1992) (intent to deceive may be inferred from circumstantial evidence); *see also People v. Dist. Court,* 779 P.2d 385, 388 (Colo.1989) (evidence regarding a criminal defendant's state of mind need not be direct; the fact finder may infer an intent to cause the natural and probable consequences of unlawful voluntary acts).

¶ 30 Thus, while the Commission was required to defer to the Panel's findings of historical fact, including the finding that Nixon was credible, it had no duty to defer to the Panel's ultimate conclusion of fact that Nixon had not committed an act or omission within the scope of RR–112.2. If it had correctly made ultimate conclusions of fact, the Commission would not have been precluded from rejecting the Panel's decision—even in the absence of direct evidence of Nixon's mental state—by *inferring* from the factual record a willful, intentional, or knowing verbal departure from the truth, making of a false report, or omission of information.

¶31 We note that, outside the administrative agency context, the issue of a party's intent is viewed as a question of fact, involving an assessment of credibility, and, on review, courts give deference to the fact finder's determination of intent. *See e.g., Burns v. McGraw–Hill Broad. Co.,* 659 P.2d 1351, 1361 (Colo.1983) (whether statements were made with reckless disregard for truth or falsity depended on trier of fact resolving issues of credibility); *Hatfield v. Barnes,* 115 Colo. 30, 33, 168 P.2d 552, 553 (1946) (issue of good or bad faith is ordinarily a question of fact for the jury); *In re Marriage of Bartolo,* 971 P.2d 699, 700 (Colo.App.1998) (intent is a question of fact for the trial court to resolve, taking into account the witnesses' credibility); *Southgate Water Dist. v. City & Cnty. of Denver,* 862 P.2d 949, 954 (Colo.App.1992) (appellate court defers to the trial court's resolution of factual issues upon disputed evidence of intent); *Burman v. Richmond Homes Ltd.,* 821 P.2d 913, 920 (Colo.App. 1991) (the issue of a party's intent is a question of fact); *Bithell v. W. Care Corp.,* 762 P.2d 708, 712 (Colo.App.1988) (the question whether a party's statements were truthful was a question of fact).

¶32 However, as discussed above, the administrative context is different from the civil context, and the Act sets up a distinct type of review by administrative agencies. *See* § 24–4–105(15)(b). *Lawley* indicates that the Commission can reach its own ultimate conclusions of fact about whether Nixon violated the various subparts of RR–112.2. Further, under *Lawley* and the Act, the Commission is not bound by the Panel's findings to decide the issue in any particular way, and we do not mean to suggest any particular outcome on remand to the Commission.

¶33 Because the district court's review under C.R.C.P. 106(a)(4) was limited to deciding whether the Commission exceeded its jurisdiction or abused its discretion, once the court determined that the Commission had abused its discretion by misapplying the law, the court was required to remand the case to the Commission for review under the correct legal standard and for the Commission to determine whether Nixon violated RR–112.2. The district court therefore erred by making its own findings in lieu of remanding the case to the Commission.

## V. Conclusion

¶34 We reverse that part of the district court's order that purports to determine whether Nixon violated RR–112.2. We remand the case for the district court to, in turn, remand the case to the Commission, so that the Commission may reconsider its decision under the legal standards described herein.

Taubman and Richman, JJ., concur