17CA0833 McDivitt v PERA 05-24-2018

COLORADO COURT OF APPEALS

Court of Appeals No. 17CA0833
City and County of Denver District Court Nos. 15CV713 & 15CV34501
Honorable Edward D. Bronfin, Judge

Patrick J. McDivitt,

Plaintiff-Appellant,

v.

Public Employees' Retirement Association of Colorado; Public Employees' Retirement Association of Colorado Board of Trustees in their official capacity; and Office of the Colorado State Court Administrator,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE HARRIS
Taubman and Nieto*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 24, 2018

Patrick J. McDivitt, Colorado Springs, Colorado, for Plaintiff-Appellant

Rollin Braswell Fisher LLC, Eric Fisher, Caleb Durling, Corey Longhurst, Greenwood Village, Colorado, for Defendants-Appellees Public Employees' Retirement Association of Colorado and Public Employees' Retirement Association of Colorado Board of Trustees in their official capacity

Cynthia H. Coffman, Attorney General, Leann Morrill, First Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Office of the Colorado State Court Administrator

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Plaintiff, Patrick J. McDivitt, a recently retired city employee, appeals a decision by the defendant, Public Employees' Retirement Association of Colorado (PERA), denying him service credit for a prior one-year term of employment that ended in 1980.

¶ 2     At that time, McDivitt was a law clerk for the Colorado Court of Appeals. During the term of his clerkship, McDivitt was not a member of PERA. He has never claimed that he applied for membership, intended to be a member, or that he mistakenly opted out of membership. To the contrary, he has acknowledged that he elected not to make contributions to PERA and that he understood that the court of appeals was not making contributions on his behalf.

¶ 3     Nevertheless, in 2001, when McDivitt returned to PERA-covered employment, he sought service credit for the term of his clerkship. Though he does not dispute that he intended to forgo membership in PERA, he says that he does not recall completing a waiver form, the court of appeals has not produced such a form, and there is no evidence that PERA approved his waiver. Therefore, he insists, he did not satisfy the statutory criteria for opting out of

membership and so he is entitled to PERA credit for his clerkship term.

¶ 4    The PERA Board of Trustees (the Board) determined that McDivitt failed to establish his entitlement to service credit and, in any event, his claim was barred by laches.

¶ 5    We conclude that the record supports the Board's determination that McDivitt is not entitled to credit.  Accordingly, without addressing the applicability of the doctrine of laches, we affirm.

## I.    Background

### A.    Factual Background

¶ 6    In August 1979, McDivitt was hired as a temporary law clerk at the court of appeals.  The court of appeals is a PERA employer.[1]

---

[1] As PERA members, the judges on this division may have a financial stake in the outcome of the case.  Generally, a judge must recuse herself from any proceeding in which she has a financial interest.  *See Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635, 639-40 (Colo. 1987).  But where *every* judge on the court has a common interest in the outcome of a case, recusal would prevent the case from being decided and no judge is required to recuse herself. *Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 931-32 (Colo. App. 2002).  *See also* C.J.E.A.B. Advisory Op. 2013-03 (July 9, 2013) (concluding that the rule of necessity overrides a judge's potential conflict in deciding a case involving PERA).  Therefore, despite our

¶ 7     Under then-existing rules, law clerks, like all temporary or part-time employees, could either apply for "optional membership" in PERA or could choose to "be excluded from membership." *See* PERA Rules 10.2012, 10.202, 8 Code Colo. Regs. 1502-1 (effective Dec. 11, 1967-Dec. 30, 1979).  The PERA rules required that a decision to opt out of membership be documented on a form signed by the employee and employer and forwarded to PERA for approval. PERA Rule 10.2012(b), (e), 8 Code Colo. Regs. 1502-1 (effective Dec. 11, 1967-Dec. 30, 1979).  If the temporary employee's term ultimately exceeded one year, he or she was required to be "covered thereafter."  PERA Rule 10.2012(2), 8 Code Colo. Regs. 1502-1 (effective Dec. 11, 1967-Dec. 30, 1979).

¶ 8     McDivitt did not produce a membership application.  His personnel forms indicated that neither he nor the court of appeals contributed to PERA during the term of his employment at the court.

¶ 9     About twenty years later, in 2001, McDivitt was hired by the City of Colorado Springs.  The City of Colorado Springs is a PERA

possible financial stake in the outcome of this case, we need not recuse ourselves.

employer. When McDivitt determined that he might retire from his job with the City, he realized that service credit from his clerkship would "do wonders" for his retirement benefits. For example, he could purchase up to ten years of service credit (that would be converted into a 29% increase in retirement benefits), rather than five, if he could establish membership in PERA prior to 1999. His only claim to pre-1999 membership was his employment as a law clerk.

¶ 10    In December 2001, McDivitt contacted PERA seeking service credit for his clerkship term. He explained that he "need[ed] the year of credit not only for years of service, but also to be able to purchase additional years of credit not subject to the 5-year limit." McDivitt did not claim that he had been a member of PERA or that he had intended to apply for membership, but only that "there [wa]s not a waiver of PERA benefits" included in his attached personnel records.

¶ 11    In January 2002, PERA sent letters to McDivitt and defendant, the State Court Administrators Office (SCAO), the entity responsible for the court of appeals' contributions to PERA. The letters to McDivitt form the basis of his primary argument on appeal.

4

¶ 12     As relevant here, on January 25, 2002, PERA sent SCAO an "unpaid contribution agreement" purportedly showing the amount of SCAO's contribution owed from November 1, 1979, to August 12, 1980.  The contribution agreement was based on PERA's mistaken belief that McDivitt had been a part-time employee with the court of appeals who had exceeded the maximum allowable hours for a part-time employee beginning in November 1979.

¶ 13     On that same date, PERA sent McDivitt a letter (the January 2002 letter).[2]  The January 2002 letter included a copy of the unpaid contribution agreement sent to SCAO and explained the employee's process for obtaining service credit which, as the letter outlined, was contingent on the employer paying its share.  The January 2002 letter advised McDivitt that it constituted "initial notice" under section 24-51-402(4), C.R.S. 2017.

¶ 14     But SCAO did not agree that it owed an unpaid contribution. SCAO responded to PERA's letter by disclaiming knowledge of McDivitt's employment (as it no longer had personnel records from

[2] On January 28, 2002, PERA sent McDivitt a substantially similar letter explaining the date on which his potential PERA benefits would commence.

1979) and requesting a copy of a "member record form that shows [McDivitt] chose participation with PERA through Judicial." SCAO noted that "it is very possible that [McDivitt] declined PERA since it was an option at that time."

¶ 15　　In response, PERA forwarded the personnel records received from McDivitt. According to PERA, because SCAO had "been unable to provide PERA with documentation showing that Mr. McDivitt chose an exemption from [PERA] membership," SCAO owed the unpaid contribution.

¶ 16　　Again, SCAO responded that "[s]ince there is no PERA enrollment form from the employee," and because McDivitt's personnel records established that "PERA contributions were not to be taken at the time of employment," it appeared that McDivitt was not a member of PERA during his clerkship.

¶ 17　　Finally, in February 2003, SCAO submitted a more thorough response to PERA's demand for unpaid contributions. It explained that McDivitt had been a temporary, not a part-time, employee; that PERA rules then in effect permitted exempt status for temporary employees; and that new law clerks were offered the choice to "accept PERA membership or to exercise their option not to be

6

covered." SCAO advised PERA that "[v]ery few [law clerks] elected PERA membership." SCAO also challenged PERA's premise that the court's inability to produce a waiver form demonstrated McDivitt's entitlement to credit, as the form would have been forwarded to PERA pursuant to its rules.

¶ 18 Still, SCAO acknowledged that PERA membership would be required "at such time that the temporary employee exceeded the one-year limit." Because McDivitt's term of employment ran from August 1, 1979 to August 12, 1980, SCAO conceded that he might be entitled to twelve days of service credit for August 1 to August 12, 1980.

¶ 19 At that point, PERA relented. It reinitiated contact with McDivitt; reminded him that it had been "investigating . . . potential unpaid contributions" from the court of appeals; but informed him that, in light of new information received from the court, it needed additional documentation concerning PERA membership or exemption.

¶ 20 McDivitt responded about eighteen months later. He did not contend that he had been a member of PERA or that he had mistakenly or unknowingly opted out of PERA. Instead, he

7

reiterated his earlier position that under the PERA rules, exemption required a written statement, the court did not have such a statement, and he did not recall signing one. And he noted that PERA had earlier "informed [him] that [he] should receive credit for that year."

¶ 21 PERA told McDivitt it could not pursue his claim without additional documentation, and neither party pursued the matter for the next eight years.

¶ 22 In 2013, McDivitt prepared to retire from his job with the City of Colorado Springs. He applied to purchase ten years of service credit based on his PERA membership during his clerkship and reasserted his claim for service credit.

¶ 23 PERA allowed McDivitt to purchase ten years of service credit based on his membership in PERA from August 1 to August 12, 1980, but declined to award service credit for the remainder of his clerkship.

B. Procedural History

¶ 24 In February 2013, PERA issued a "staff determination" denying McDivitt's request for service credit from August 1, 1979, to July 31, 1980. According to the staff decision, McDivitt had failed

8

to provide sufficient documentation to satisfy his burden to demonstrate entitlement to credit. It concluded that, based on the evidence, McDivitt had "chosen to exempt [himself] from PERA membership for [his] year of employment as permitted by PERA law and rules at the time." The staff decision advised McDivitt of his appeal rights.

¶ 25   McDivitt appealed the decision to PERA's Executive Director, who affirmed the staff decision.

¶ 26   McDivitt then appealed the Executive Director's decision to a panel of the Board (the Panel). The Panel received briefing from PERA, SCAO, and McDivitt, and conducted a two-day evidentiary hearing. McDivitt testified at the hearing. He did not say that he had intended to be a member of PERA during his clerkship, believed he was a member of PERA, or inadvertently failed to apply for membership. He did not deny, though he does not appear to have been asked directly, that he intended to opt out of membership. Instead, he confirmed that, at the time of his employment with the court, he "was aware" that he was not covered by PERA. Following the hearing, the Panel affirmed the Executive Director's decision, ruling that McDivitt had not met his burden to show eligibility for

PERA membership during the first year of his clerkship and that his claim was barred by laches.

¶ 27    McDivitt appealed the Panel's decision to the Board and, after reviewing the record and hearing argument, the Board affirmed the Panel's decision.

¶ 28    McDivitt then filed this C.R.C.P. 106(a)(4) action in the district court.  McDivitt argued that he was entitled to service credit for the period from August 1, 1979, to July 31, 1980 on two grounds: (1) PERA had granted the credit in the January 2002 letter, the January 2002 letter was a "staff decision" that became binding on PERA when it was not appealed within ninety days, and PERA could not reopen the final decision eleven years later; and (2) even if the January 2002 letter was not a final determination, the Board abused its discretion in denying the service credit in 2013 because there was no evidence that McDivitt had signed a waiver form, as required for exemption from PERA membership.  McDivitt also challenged PERA's authority to invoke laches and the Board's finding that the elements of laches had been established.

¶ 29    In a thorough, well-reasoned decision, the district court affirmed the Board's order.

## II.     Discussion

¶ 30     On appeal, McDivitt reasserts his two grounds for reversal. First, he argues that the Board lacked jurisdiction to re-decide the issue of his entitlement to service credit, having resolved that question in 2002.  Second, he argues that even if the Board had jurisdiction to decide the issue, it abused its discretion by deciding that he was not entitled to the credit.[3]

### A.     Preservation and Standard of Review

#### 1.     Preservation

¶ 31     As a preliminary matter, we reject the defendants' contention that, although McDivitt has asserted his second argument at every stage of the administrative proceedings and in the district court, he abandoned it on appeal to this court.  We read McDivitt's third issue on appeal to encompass his oft-repeated claim that he was not exempt from membership in PERA during his clerkship and therefore he was entitled to service credit for that year.  Though the last sentence of his four-page argument mentions laches, the

---

[3] McDivitt also challenges the Board's application of the defense of laches.  But in light of our disposition, we need not address that issue.

sentence begins with the assertion that "[u]nder its statutes and rules, PERA has no option but to grant McDivitt membership . . . ." That assertion is a summary of the four-page argument that precedes it. Thus, we do not construe the brief reference to laches to change the nature of the claim.

## 2. Standard of Review

¶ 32 On appeal from a judgment under C.R.C.P. 106(a)(4), we focus on the decision of the administrative agency, not that of the district court. *Hammond v. Pub. Emps.' Ret. Ass'n*, 219 P.3d 426, 428 (Colo. App. 2009). We will reverse the decision of a board of an administrative agency only if we find that the board acted arbitrarily or capriciously, made a decision that is unsupported by the record, erroneously interpreted the law, or exceeded its authority. *Dep't of Human Servs. v. State Pers. Bd.*, 2016 COA 37, ¶ 12.

¶ 33 Findings of fact must be accepted on review, unless they are so clearly erroneous as not to find support in the record. *Ward v. Dep't of Nat. Res.*, 216 P.3d 84, 93 (Colo. App. 2008). And we will affirm the agency's legal conclusions if they are supported by a reasonable basis. *Hammond*, 219 P.3d at 428.

¶ 34    In short, we must uphold an agency's final decision if a consideration of the record as a whole reveals that the decision is supported by substantial evidence. *Dep't of Human Servs.*, ¶ 13. In considering the record, we resolve all reasonable doubts as to the correctness of the administrative body's ruling in its favor. *Id.* at ¶ 14.

### B.    PERA Had Jurisdiction to Reopen the Issue of McDivitt's Prior Eligibility for Membership in PERA

¶ 35    McDivitt first contends that the Board lacked jurisdiction in 2013 to determine whether he was entitled to service credit for the term of his clerkship. According to McDivitt, PERA granted him credit, at least from November 1979 to August 1980, in the January 2002 letter. And the January 2002 letter, he says, was a "staff decision" that became final and binding ninety days after its issuance, when the time to appeal expired.

¶ 36    We agree that an agency is not authorized to reconsider a final decision once the review period has expired. *See Moschetti v. Bd. of Zoning Adjustment*, 40 Colo. App. 156, 158, 574 P.2d 874, 875 (1977) ("[A]n administrative board has authority to modify a decision at any time prior to the date an appeal must be perfected

13

pursuant to procedure governing judicial review of that order."). The question, then, is whether the January 2002 letter constituted an appealable "staff decision" that became final and binding on PERA.

¶ 37     The term "staff decision" or "staff determination" is not defined by statute or rule. The only reference to a "staff decision" in the PERA rules is found in PERA Rule 2.20(A), 8 Code Colo. Regs. 1502-1: "A written request for an initial decision by the Executive Director must be received by the Association within 90 days after the date on which the staff decision is mailed. The staff decision shall be sent by certified mail."

¶ 38     The Board found that the January 2002 letter was not an appealable staff decision but a "bill" to SCAO with a corresponding explanation to McDivitt of the process for obtaining service credit.

¶ 39     The district court, in turn, determined that the proper characterization of the January 2002 letter presented a question of fact and upheld the Board's finding as supported by the evidence. As the district court explained, "The [January] 2002 [l]etter advised Mr. McDivitt that PERA would notify him when SCAO made that payment and instructed Mr. McDivitt on how he could receive full

service credit and full salary." The court noted that the January 2002 letter advised McDivitt that his ability to obtain service credit was contingent upon SCAO's payment of the "bill," and that the letter made clear that SCAO had not yet agreed to pay the bill.

¶ 40 On appeal, McDivitt says the Board's finding was not an ordinary factual finding, but an "ultimate conclusion of fact," subject to a less deferential standard of review. An administrative body decides an "ultimate conclusion of fact" when it makes a factual determination that involves a question of law. *Nixon v. City & Cty. of Denver*, 2014 COA 172, ¶ 22. Ultimate conclusions of fact often settle the rights and liabilities of the parties. *Id.* Where an administrative body interprets and applies its own rules to the facts, it makes an "ultimate conclusion of fact." *Id.* at ¶ 23.

¶ 41 Even if we assume that the characterization of the January 2002 letter was an ultimate conclusion of fact, we nonetheless must affirm the Board's determination if it has a "reasonable basis in law." *Id.* (citation omitted); *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1252 (Colo. 2001) (holding that the court of appeals erred in overturning the Board's decision where its ultimate conclusion of fact had a reasonable basis in law).

¶ 42     Here, for three reasons, we conclude that the Board's determination that the January 2002 letter was not a staff decision has a reasonable basis in the law.

¶ 43     First, like the district court, we conclude that the Board's construction of the January 2002 letter is reasonable. The January 2002 letter did not specifically inform McDivitt that he had been granted service credit. Instead, the letter explained the process for obtaining the credit. McDivitt was advised that "full service credit and full salary will result only if both the employer's share and the employee's share are paid in full."

¶ 44     The contingent nature of the advisement is significant, in our view, because McDivitt would have known in January 2002 both that SCAO had not yet made any contribution on his behalf and that SCAO would have had a valid defense to any demand for contribution. After all, according to McDivitt's own testimony and arguments, he knew that he was not a member of PERA from 1979 to 1980, and that neither he nor the court of appeals had made any contributions on his behalf during that period.

¶ 45     Second, and relatedly, final agency decisions must include notice of available appellate remedies, *see Mountain States Tel. &*

*Tel. Co. v. Dep't of Labor & Emp't,* 184 Colo. 334, 338, 520 P.2d 586, 589 (1974) (Procedural due process requires that notice of agency action include any "available appellate remedies."), and the January 2002 letter did not include any such notice. The absence of any notice of appeal rights is also consistent with the Board's interpretation of the January 2002 letter as a mere bill with an explanation.

¶ 46    Third, under PERA Rule 2.20, 8 Code Colo. Regs. 1502-1, a final decision must be sent by certified mail and the January 2002 letter was not. Indeed, McDivitt himself appears to concede that this characteristic of the letter precluded it from serving as a staff decision: "[T]he letters did not constitute a 'staff decision' binding on McDivitt," he asserts in his opening brief, because "[n]either letter was sent by certified mail as required by Rule 2.20A."

¶ 47    Accordingly, we conclude that the Board had a reasonable basis for determining that the January 2002 letter was not a "staff decision" and, consequently, that the Board was not divested of jurisdiction to re-open the issue of McDivitt's entitlement to service credit in 2013.

### C. The Board Did Not Abuse its Discretion in Finding that McDivitt Was Not Entitled to Service Credit for The Period from August 1979 to July 1980

¶ 48   In addressing the merits of McDivitt's claim, we begin by emphasizing that McDivitt bore the burden of proof during the administrative proceedings. § 24-4-105(7), C.R.S. 2017 ("[T]he proponent of an order shall have the burden of proof . . . ."); *see also* PERA Rule 2.20(E), 8 Code Colo. Regs. 1502-1 ("The person who requested the hearing shall bear the burden of proof by a preponderance of the evidence at the hearing."). Accordingly, he had to demonstrate that he was, or should have been, a member of PERA from August 1, 1979 to July 31, 1980.

¶ 49   The Board determined that McDivitt had not demonstrated his eligibility for membership during that period. To the contrary, the Board concluded that, as a temporary employee, McDivitt had likely waived membership in PERA.

¶ 50   McDivitt does not expressly dispute that he intended to forgo membership in PERA. Instead, he says that, to be exempt from PERA, the employee and the employer had to memorialize the employee's decision in a written waiver form, and neither PERA nor SCAO has produced a written waiver form. Therefore, he contends,

he could not be exempt from PERA and he must instead have been a member or, at least, eligible for membership.

¶ 51    We discern two problems with McDivitt's argument.

¶ 52    For one thing, his argument assumes that PERA rules required temporary employees to "opt out" of membership.  In other words, according to McDivitt's theory, in the absence of proof that he had opted out, he was necessarily a member.

¶ 53    But under the PERA rules then in effect, temporary employees had to "opt in" to "optional membership."[4]  *See Sanger v. Davis*, 148 P.3d 404, 416-17 (Colo. App. 2006) (discussing "opt in" versus "opt out" rules of procedure).  PERA Rule 10.201, 8 Code Colo. Regs. 1502-1 (effective Dec. 11, 1967-Dec. 30, 1979), provided that "all full-time employees" were required to become members "unless the law specifically permits optional election of membership."  PERA's rules did allow for optional election of membership for certain employees.  PERA Rule 10.202, 8 Code Colo. Regs. 1502-1 (effective

---

[4] At oral argument, PERA, but not SCAO, conceded McDivitt's premise that the rules required membership in PERA unless the employee opted out.  But the concession was not based on an interpretation of PERA Rules 10.201, 10.202, 8 Code Colo. Regs. 1502-1 (effective Dec. 11, 1967-Dec. 30, 1979), and, in any event, we are not bound by PERA's concession.

Dec. 11, 1967-Dec. 30, 1979) — entitled "Optional Membership" — provided that "[a]ny part-time, temporary, or seasonal employee, regardless of the nature or extent of his employment, may apply for, and subject to the approval of the retirement board, be admitted to membership." This rule explains why, initially, SCAO twice requested a copy of an "enrollment form" showing that McDivitt had "chose[n] participation with PERA through Judicial," and why the Board specifically found that "[n]either PERA nor the Court has a PERA membership form for Mr. McDivitt."

¶ 54    If PERA rules required a temporary employee to "opt in," then McDivitt had to produce an enrollment form or other proof of membership. It would not be enough, under those circumstances, to rest on the absence of a waiver form.

¶ 55    But even if we assume that under the then-existing PERA rules, a temporary employee was enrolled in PERA unless he "opted out" of membership in accordance with Rule 10.2012, McDivitt still cannot prevail.

¶ 56    McDivitt has not once denied that he intended to opt out of PERA. His argument is not that he thought he was a member of PERA, or that he intended to be a member of PERA, or that any

exemption from PERA was inadvertent or unknowing; his argument is simply that the court of appeals apparently failed to comply with PERA's rule that the employee document his decision to opt out.

¶ 57    McDivitt, though, is not entitled to money from SCAO simply because his intention to forgo membership in PERA was not documented.  Here, where McDivitt has, implicitly in his briefing and more explicitly at oral argument, acknowledged his intent to waive membership, the absence of the waiver form amounts to a mere procedural irregularity.  Ordinarily, a party is not entitled to a remedy based on a procedural irregularity unless the irregularity "injure[d] or harm[ed]" the complaining party.  *Amos v. Aspen Alps 123, LLC*, 2012 CO 46, ¶ 17; *see also Rags Over the Ark. River, Inc. v. Colo. Parks & Wildlife Bd.*, 2015 COA 11M, ¶ 65 ("The harmless error rule applies to judicial review of administrative proceedings," and therefore a plaintiff must show prejudice from an administrative agency's failure to follow its regulations.) (citation omitted).

¶ 58    "Waiver" is defined as the intentional relinquishment or abandonment of a known right.  *People v. Rediger*, 2018 CO 32, ¶ 39.  Thus, we presume that the missing or nonexistent "waiver"

form would have advised McDivitt of his right to membership in PERA and informed him that, by opting out, he was relinquishing that right. The form, therefore, would have demonstrated that McDivitt's relinquishment of his right to membership was knowing and intentional.

¶ 59 But according to McDivitt's own testimony, he knew that he was not a PERA member during his clerkship term, and he has not alleged that his nonmembership status was unintentional. Under these circumstances, the court's failure to procure McDivitt's signature on a waiver form did not harm or prejudice him. We will not "elevate form over substance" and reverse the Board's decision based on a procedural irregularity that did not affect McDivitt's rights. *Amos*, ¶ 20.

¶ 60 The missing waiver form is not a trump card for McDivitt. The Board determined that, notwithstanding the absence of the form, McDivitt had likely waived membership. That determination is supported by the record: McDivitt did not produce an enrollment form, his personnel records show that neither he nor the court of appeals was to make any contributions to PERA, and he has not ever asserted that he was, or intended to be, a member of PERA

22

during his clerkship.  Accordingly, the Board did not abuse its discretion in finding that McDivitt had failed to meet his burden of demonstrating eligibility for membership in PERA from August 1979 to July 1980.

## III.   Conclusion

¶ 61     The judgment is affirmed.

JUDGE TAUBMAN and JUDGE NIETO concur.